BRONSON v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.    December 18, 1897.)

RAILROADS—ACCIDENT AT CROSSING—IMPUTED NEGLIGENCE.

As intestate was about to drive across four parallel railroad tracks at night, he overtook S., and requested him to look for approaching trains. S. went on the nearest track, and, thinking the way clear, hallooed to intestate to come on. About 30 feet from the highway, cars were standing on a side track, which left the nearest main track, and ran to the west. Intestate drove past S., and upon the furthest track, where he was struck by a train coming from the west. *Held,* that S.'s negligence was imputable to intestate.

Appeal from trial term, Onondaga county.

Action by Merritt A. Bronson, administrator, etc., of Harvey A. Bronson, deceased, against the New York Central & Hudson River Railroad Company, for the death of plaintiff's intestate. From an order setting aside a verdict for defendant, and granting a new trial, defendant appeals. Reversed.

Issues of fact were brought to trial at a trial term in Onondaga county in April, 1896, before the court and a jury, and a verdict was rendered for the defendant. Thereupon the plaintiff moved for a new trial upon the minutes, and an order granting a new trial was made "(1) upon the grounds that the court erroneously charged the jury that the negligence of Sayre should be imputed to the plaintiff's intestate; (2) and the court believes said charge misled the jury, to the prejudice of the plaintiff; (3) and that, upon all the facts and circumstances of the case, the court believes that justice will be promoted by granting a new trial." On the 8th of October, 1893, plaintiff's intestate and one McCarg left the village of Baldwinsville, with a horse and wagon, and went south on the Van Vleck highway, and approached the crossing where the accident occurred which resulted in the loss of the life of the intestate. As they approached the West Shore tracks they halted, and made some efforts to see whether the West Shore tracks were clear, and also the New York Central tracks, which lay next south of the West Shore tracks. Before they reached the West Shore tracks they overtook Sayre, and had a conversation with him as they approached the ascent to the West Shore tracks. McCarg was driving the horse, and he said to Sayre, "You can get in and ride with us." Thereupon McCarg says, "Go up to the West Shore, and see if you can see any train in sight." The witness Sayre says: "I went up to the West Shore, and there was no train in sight, and I hallooed to them to come on." The witness continues: "They came along up over the West Shore track, and stopped between the West Shore and the Central, and I went on up onto No. 4 on the Central. I saw a branch extending to the west, leading from No. 4 freight track, and between No. 4 and the West Shore tracks; extending, I should think, about a mile west. There were cars upon that branch. They were about, I should think, 30 or 40 feet, perhaps further, from the highway. * * * These boys in the buggy came up onto the West Shore track, in obedience to my suggestion to come on. I went up there onto No. 4 track on the New York Central, and they stopped then, and stood there, between the West Shore and the Central tracks; and I looked up and down the New York Central track. I looked to the east, and I looked to the west, to see if there was a train coming in either direction. I didn't see, nor I didn't hear, any train. And I stood there, and hallooed to them to come on, and they came on. I say that I looked to the east and to the west, and listened. Afterwards I saw a train coming from the west, which produced this collision. * * * I was aware immediately that the boys had been struck, or their vehicle had been struck. They came on when I hallooed. They started to go across the tracks. The vehicle in which the boys were riding when it was struck was on No. 1 track." The accident occurred about half past 11 on Sunday night,—a bright, clear night; and they were struck by a train on track No. 1, coming from the west. Sayre, when recalled as a witness, stated: "As they went by me, McCarg looked— As they came along even with me, McCarg looked out of the buggy. * * * I

48 N.Y.S.—17

didn't see Bronson turn his head at all. I saw McCarg look east and west."
The defendant appeals from the order setting aside the verdict and granting a
new trial.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN,
and WARD, JJ.

Frank Hiscock, for appellant.
W. S. Jenney, for respondent.

HARDIN, P. J.    To the charge delivered to the jury by the learned
trial judge, no exception was taken. In the course of the charge the
trial judge observed to the jury:

"You have the testimony with regard to the agency of this witness, Sayre.
He was delegated by the young man whose death was caused, as well as by his
companion,—they were jointly interested,—delegated by him to go and watch
and listen and look for the approaching train. Now, gentlemen, if he was
guilty of negligence on his part, then his negligence is attributable to the young
man in question, and the plaintiff cannot recover. Sayre was the agent in-
trusted with this duty, and the young man must bear the burden of his faith-
fulness or his neglect. And in this connection I will say that you should have
a well-defined idea as to why this headlight upon the moving and approaching
locomotive was not observed,—not something vague and indistinct, but a well-
defined idea as to why it should have escaped observation at that time. In con-
sidering this question of contributory negligence, you should take into consid-
eration all the circumstances of the case, surrounding that locality." Later
on, and near the close of the charge, the trial judge said: "Your next ques-
tion will be, was the young man who died guilty of contributory negligence?"

Upon a careful examination of the evidence, we find that a sharp
conflict was presented upon the two leading questions of fact that
were considered at the trial.    To sustain the charge of negligence on
the part of the defendant, there was the fact that the train was mov-
ing, as the engineer testifies, at the rate of about 60 miles an hour;
and there was some evidence that the bell was not rung or the whistle
sounded as it approached the highway crossing.    On the other hand,
there was positive evidence that the bell was rung, given by the en-
gineer and the fireman, and other circumstances tending to contradict
the evidence of the plaintiff introduced for the purpose of establishing
negligence on the part of the defendant.

2. There was no direct and positive evidence to indicate that the
deceased was free from contributory negligence.    The facts and cir-
cumstances of the accident, coupled with the testimony of Sayre, were
relied upon to justify the jury in inferring that the deceased was free
from contributory negligence.    The case in behalf of the plaintiff, in
that regard, is so slender and slight that we are of the opinion that
the jury may have found upon the evidence that the plaintiff had not
borne the burden which required him to establish that the deceased
was free from contributory negligence.

The learned counsel for the plaintiff contends that the court has the
power to set aside the verdict, though no exception was taken to what
he claims to be the erroneous portion of the charge, and that it was
the duty of the court so to do.    He calls our attention to several
cases bearing upon that contention.    In Benedict v. Johnson, 2 Lans.
94, it was said that a verdict improperly influenced by misdirection of
the judge will be set aside upon a case made, although no exceptions

have been taken. That decision was made upon a case made and heard at special term, and not upon a motion for a new trial made upon the minutes. In that case the court, at special term, had exercised its discretion, and granted a new trial upon the payment by the defendant of the costs of the former-trial. In Wheeler v. Sweet, 137 N. Y. 435, 33 N. E. 483, it was held that instructions by the trial court in the absence of the plaintiffs and their counsel, which were erroneous and adverse to the plaintiffs upon a material point, might be made the foundation for setting aside the verdict, without an exception being taken to such instructions. In Mandeville v. Marvin, 30 Hun, 283, the report of a referee was set aside by the general term, although the party aggrieved had failed to present a proper exception for correcting the error or mistake which was made by the referee; and it was said in that case that the error was "so grievous to the defendant, and the injustice which would be done if the judgment were allowed to stand was so great, that the judgment should be reversed, although no specific exceptions to the error committed by the referee had been taken." In Schwinger v. Raymond, 105 N. Y. 648, 11 N. E. 952, it was said that the general term has power to set aside a verdict, as contrary to evidence, although that power was not possessed by the court of appeals. In Railroad Co. v. Charlier (Sup.) 7 N. Y. Supp. 528, it was said that a misdirection by the court upon a material point, although not excepted to by the defendant, may be made by him the foundation for a motion for a new trial. In Whittaker v. Canal Co., 49 Hun, 400, 3 N. Y. Supp. 576, the rule was stated, and it was held in that case that "when a case has been submitted at circuit to a jury, upon a theory which is wholly erroneous, the general term has power, and it is its duty, to grant a new trial because of the erroneous instruction, although an exception was not taken thereto." Our attention is also called to Gowdey v. Robbins, 3 App. Div. 356, 38 N. Y. Supp. 280. In that case a promissory note was presented as a defense, which it was claimed had been altered; and in the course of the charge the judge instructed the jury that the burden was upon the plaintiff of "showing that that note is other than what it purports to be, or than what the defendant says it is," whereas, in the opinion of the court, the instruction should have been that "the burden was upon the defendant of showing that the alteration had been made before the note was signed." For that grave misdirection a new trial was ordered, although an exception had not been taken, upon payment of the costs of the trial and the costs of the appeal; the court saying that a new trial should be granted, under "the unusual circumstances presented here." See Sorensen v. Balaban, 11 App. Div. 164, 42 N. Y. Supp. 654.

Upon a careful examination of the evidence in this case, we cannot say that the instructions given by the trial judge were erroneous, or that they led to an improper verdict. As already intimated, there was a conflict in the evidence upon the question of whether the defendant was guilty of negligence, and there was no direct evidence showing that the intestate was free from contributory negligence; and the evidence given at the trial indicated that he relied upon the observations made by Sayre at the time he consented to advance across

the tracks of the defendant. And there is no evidence that the intestate looked, listened, or used any diligence to apprehend the approach of the train, which was visible if there had been a proper exercise of vigilance, before attempting to cross track No. 1. We think the order granting a new trial should be reversed, and the motion for a new trial denied.

Order reversed, with costs, and new trial denied, and judgment ordered for the defendant upon the verdict, with costs.

All concur, except WARD, J., who concurs in the result.

WARD, J. I concur in the result, but do not concur in the conclusion that the negligence of the witness Sayre was the negligence of the plaintiff's intestate.